## APPROPRIATION OF EASEMENT FOR LINE OF HIGH TENSION WIRES.

### Probate Court of Wayne County.

### THE OHIO PUBLIC SERVICE COMPANY v. DANIEL W. MOWREY ET AL.

### Decided July, 1925.

*Corporations—Are Not Necessarily Chartered for Dual Purposes—Although Permitted to Engage in Different Activities—Incidental Purposes Named in Charter of a Corporation—Not a Bar to Appropriation for the Main Purpose—Failure to State Termini of Proposed High Tension Lines Not Fatal—Easement Appropriated for such a Purpose Is for a "Public Use"—Necessity for the Appropriation—Inability to Agree With the Land Owners —Section 8625.*

1. It cannot be successfully contended that a corporation, organized for the purpose of producing gas, the drilling of gas wells, the creation and distribution of electric energy, and the operation of electric railways, is in possession of a void charter because organized for dual purposes.

2. Where the main purpose of an incorporation is the operating of power plants and maintenance of wires and poles for the manufacture and distribution of electricity, jurisdiction of the court over an action for appropriation of a right of way for high tension lines is not affected by reason of the fact that incidental purposes are mentioned in the company's article of incorporation. Such purposes while rightfully included are mere surplussage in an appropriation proceeding.

3. Failure to state the termini of such an improvement is not fatal to an action for an appropriation of a right of way, since the provision of the statute requiring such a statement must be construed as not applicable to an improvement without a known end, to be constructed by a company whose charter covers many municipalities, and counties, its ultimate termini depending on the development of the country through which it passes and the success of the company prosecuting the enterprise.

4. Land appropriated for a line of high tension wires is for a public use, and appropriation of the easement for such a line cannot be prevented where the purpose is to connect two different systems and afford a better supply of light and power for which there is a public demand.

5. Inability to agree as to the value of the land which it is proposed to appropriate is sufficiently shown by evidence of repeated offers by the company which were steadfastly refused by the land owners.

6. Necessity for the appropriation is shown by evidence that the property is reasonably necessary to carry out the purpose of the corporation, that the amount of land demanded is not in excess of the needs of the company, and that the route was selected after proper surveys and with due consideration for existing obstructions and the safety of the public.

JONES, J.

The plaintiff, the Ohio Public Service Company, alleges that it is a corporation duly incorporated and organized in pursuance of the laws of the state of Ohio. That by the terms of its charter it is authorized and empowered and formed for the purpose of building, owning, acquiring, leasing, operating and maintaining power plants, equipment, appliances and appurtenances thereto, together with the erection, construction, maintenance and operation of the necessary poles, lines, posts, piers, abutments, wires, cables and conduits, and to drill for gas, produce gas incidental to its business, to lay pipes, conduits, manholes, mains and other appliances and fixtures necessary and proper for the generating, manufacturing, producing, selling, furnishing, supplying, conducting, carrying, transmitting and distributing to public and private buildings, avenues, lanes, squares and public places steam and hot water, electric power, light and energy and natural and artificial gas for light, heat, power and other purposes in the several municipalities, counties and political and governmental subdivisions thereof in the state of Ohio, and incidental to said business to acquire and use a street railway or railways, and also to acquire all franchises necessary to the full exercise of said powers. That for the purpose of transmitting power, light and energy, and distributing the same to the public throughout the state of Ohio, it has established and intends to erect and construct a transmission line, commencing at a point in Ashland county, Ohio, and from that point easterly to the west line of Wayne county, Ohio, terminating at a substation in Perry township, Stark county, Ohio.

and that in order to carry out the purposes of its incorporation it is necessary that it shall appropriate, and intends to, and has taken the necessary steps to appropriate for its right of way for the construction of the line above referred to, an easement in each of the several tracts of land described in the petition, and the plaintiff prays that such steps may be taken as are authorized by law whereby it will be enabled to appropriate an easement in the real estate described in its petition for the use, objects and purposes above stated, and for such other and further relief as the nature of the case may require.

The statute, Section 11046, provides that on the preliminary hearing the four following jurisdictional questions must be proven, and the burden of proof rests upon the corporation:

1.   The existence of the corporation.

2.   Its right to make the appropriation.

3.   Its inability to agree with the owner; and

4.   The necessity for the appropriation.

This case was heard on a former day on these preliminary questions, was argued by counsel and submitted to the court, and, after careful examination, and upon due consideration, the facts now being fully understood, the court now proceeds to render its decision on the questions submitted.

The questions will be disposed of in the order above named, and first as to the existence of the corporation.

To establish the existence of the corporation plaintiff offered a copy of the articles of its incorporation duly certified by the Secretary of State, which by Section 8629 of the statute is *prima facie* evidence of the existence of this corporation.

But it is contended by counsel for defendants that this *prima facie* case is overcome by the evidence, and that under the laws of this state a corporation cannot be incorporated for dual purposes, and that plaintiff was, it is claimed, as shown by the record, organized for several purposes as appears by its articles of incorporation, and therefore its charter is void and the plaintiff has no legal existence and no capacity to sue and maintain this proceeding.

Section 8625 provides that the articles of corporation must state the purpose for which the corporation is formed. This legislative requirement that the purpose must be disclosed at the time of the formation of the corporation no doubt was, so that the charter could be denied if the purpose should be deemed unlawful, and for the further reason that those who subscribe to the capital stock may be apprised of the purpose to which their money is to be employed. A later Section, 9719, allows a corporation to amend its articles of incorporation but expressly provides that it cannot thereby substantially change the purpose of its original organization.

The case relied upon, *State* v. *Taylor,* 55 O. S., p. 61, does not support the contention of defendants counsel for that, in that case the court simply held that the statute, 3238 A, now numbered 8719 did not allow a corporation by amendment to change substantially the original purpose for which it was formed, and the Supreme Court there held the amendment did work a substantial change in the original purpose of the corporation, and the court at page 65 uses language in point as follows:

"That purpose, as expressed, manifestly is to furnish light, heat and power. Gas, whether natural or artificial, is the source of light and heat; so, also, is electricity, and that agency possesses the further property of generating power. It would seem, therefore, not unnatural or improper to authorize a company to combine the business of furnishing natural gas, for the purpose indicated, with the business of manufacturing gas and electricity and furnishing those commodities for the same and a kindred purpose, to-wit, power. Light and power being generated by the same agency, common results from the same cause or causes, the two objects are germane. The main purpose of this company seems to have been light and heat and incidental purpose power, that is, power induced by electricity. The incident would follow the principal purpose, so it would seem that a company organized for the principal purpose of acquiring and operating a street railway by electricity might naturally, having obtained authority to do so, join with the incidental purpose of furnishing light and power within the location where it is authorized to operate."

In the case at bar it is recited in the articles of incorporation that the purpose of the corporation is the creation and distribution of electric energy, and that the drilling of gas wells and operation of electric railways are merely ·incident thereto, so it is truth to say that the corporation is for a purpose, that is, the main or primary purpose is the creation and ·distribution of electric energy, and the purposes expressed in the articles of its incorporation are within the rule laid down by the Supreme Court in· the *Taylor case* above referred to, wherein the analogy to the case at bar is strong. since in both cases the production of gas, creation of electric energy. and the operation of electric railways were combined in the incorporation articles.

This action is for ·the appropriation of a right of way to build thereon a high tension line to carry out the main purpose for which the corporation was formed. and the right of way not being sought in this proceeding for the execution of any of the incidental purposes enumerated in the articles, the objection urged is not well taken, and we hold therefore, ·that any incidental purposes set forth in the articles relating to the primary object. while rightfully included therein, may· be considered as surplusage on this hearing, since the jurisdiction of· this court is not invoked by reason of their presence in the articles.

Counsel for the defendants claim that plaintiff failed to comply with Section 8625 of the Revised Statutes, and especially the fifth paragraph thereof, in that no termini is set forth in the articles of incorporation, and that this was a condition precedent to a valid incorporation, and therefore the charter is void and plaintiff cannot maintain this action.

The statute directs that, if the corporation is formed for a purpose which includes the construction . of an improvement not to be located in a single place, the articles must set forth, the kind of improvement to be constructed, its termini, and the counties in or through which it or its branches will pass.

It must be admitted that the articles on their face show that the purpose for which the corporation was formed con-

cmplates the construction of an improvement, which, with its branches is not to be located in a single place. The question presented then is has the statute been complied with? No complaint is made that the articles fail to show the kind of improvement intended to be constructed, nor that the counties in or through which it or its branches will pass have not been stated, but the contention is that plaintiff failed to state the termini of the improvement. We think the answer to this objection is that there was no termini to state. Reference to the articles is enough to convince the most critical that it never was intended that the system of lines, wires, conduits and cables was to be limited to one known place to another but the same were to be built in the several municipalities, counties, and political and governmental subdivisions thereof in the state of Ohio, in any or all of them, and that at the time of the formation of this corporation, owing to the nature and magnitude of the enterprise, it could not then be known to the incorporators the location or extent of its lines, and cannot now be known where the extensions will end. The location and construction of lines has and will depend upon the development and prosperity of the various districts of the state sufficient to create a demand for the product of this company, and this no doubt was the reason why the right was asked to serve any or even all of the municipalities and counties in Ohio.

The use of the word termini in the statute, we believe, was to apply only when the improvement was to be from one known point to another. In the case at bar the improvement was intended to be a connected system without a known end reaching to the four corners of and throughout the great state of Ohio, hence there was no termini to state. Another view to take is that the statute has been complied with as to stating a termini by reference to each and every unnamed municipality, county and political and governmental subdivision thereof in Ohio.

The record discloses that plaintiff at its birth had a capital of $1,000, and that at this date by amendments to its charter

has an authorized capital of $40,000,000, and the evidence shows improvements have already been extended to many towns and cities of this state, all of which indicates to our mind that the purpose stated in the articles to distribute gas, electric energy, steam and hot water, to the municipalities and other named districts of this state has, in a large measure been fulfilled, and this growth of the company supports the purpose as originally stated in the articles of extending its mains, lines and conduits throughout the state, and negatives the idea that it ever was the purpose to construct its improvement from one known point to another.

On the subject of termini, Sutliff, J., in 11 O. S. reports, at page 524 has this to say:

"Indeed it will be found, I apprehend, that the rule has been in our past legislation to have the point of termini somewhat indefinite in the charter, and that it has only become determinate by actual location. To require a greater degree of certainty, in the certificate, or charter, to give it validity, would necessarily defeat its objects in many, if not most of cases contemplated by the statute. For it is only by force of the license derived from the certificate, under the statute, that the company could send its engineers upon the lands of others, along the route to make necessary estimates to determine upon the feasibility of any route upon which to make a location, and determine the necessary points of the termini of the road, with entire precision."

Further while Section 8625 of the statute directs a termini to be stated when the improvement is not to be located in a single place, yet Section 9192 confers upon light and power companies the same powers prescribed for magnetic telegraph companies, which are defined in Section 9171, and which section permits such telegraph companies to construct a line or lines "whether described in its original articles of incorporation or not."

This express authorization conferred by Section 9171 to light and power companies to construct line or lines, whether same were described in the articles or not, renders the question of the failure to state a termini in the articles of the

plaintiff unimportant on this hearing, for such right is given even if there was a failure to state a termini, and the omission would have no effect upon the validity of the incorporation of plaintiff or its right to the relief prayed for in the petition.

From what has been said this court is of the opinion that upon reason and authority there has been a substantial compliance with the statute as to stating the termini in the articles, and therefore holds the objection in this regard is not well taken. And the court find from the evidence that there has been a valid election of a board of directors and officers of the corporation, plaintiff herein, and that all other statutory requirements have been complied with to constitute its legal corporate existence.

Second, as to the right to make the appropriation: Section 9192 of the Revised Statutes confers upon electric light and power companies all the powers prescribed for magnetic telegraph companies to appropriate land when it is deemed neces· sary for the erection and maintenance of its poles, piers, wires and other fixtures. While the power to exercise the right of eminent domain exists in the legislature, or such corporations as it may select, yet it can only be exercised when it is for public use, or as expressed in the constitution, Section 19 of Article 1, for the public welfare. The question, whether or not a contemplated use is a public use, or one for the public welfare, within the meaning of the constitution, is a question for the courts. As to what constitutes a public use, the inquiry presented is, what are the objects to be accomplished by the proposed improvement for which private property is to be appropriated?

The Supreme Court in 104 O. S., at page 460, discussing the subject of "public use," say that no exact definition of the term has been agreed upon by the authorities and of course there is difficulty in formulating an accurate definition that would be comprehensive and satisfactory, and the court quotes from Nichols on Eminent Domain, Section 45, as follows:

"It is a public use for which property may be taken by

eminent domain, to serve the public with some necessity or convenience of life which is required by the public as such and which cannot be readily furnished without the aid of some governmental power, provided the public may enjoy such service *as of right."*

The above and other authorities in determining what is a public use, regard as one of the controlling considerations, *the right* of the public to use or have service from the improvement for which land is to be appropriated as a matter of right and not as a mere favor. That is if the improvement is purely for a private purpose, or even a so-called public purpose, but if in fact it be within the power of the corporation to arbitrarily deny to the public the use to which it by right should be entitled, then it is not a public use. It has been repeatedly held that private corporations engaged in furnishing electricity to municipalities or its inhabitants is manifestly a public service or public utility corporation, and is subject to the rules applicable to corporations engaged in performing or rendering service of a public nature, and the law is well settled that the rates to be charged for light and power, may be the subject of municipal control. And a corporation is bound by the implication of the law empowering it to do business, to make no unreasonable discriminations, but to give service to every person who pays and conforms to its reasonable regulations.

In this state Section 9193 of the Revised Statutes provides that light and power companies are subject to municipal control and the consent of the municipality must be had before the construction therein of its lines and other fixtures, and Section 9395 permits the manufacture and distribution of its current under such reasonable regulations as may be prescribed by the municipality.

The status of plaintiff as a public utility is fixed by Section 614-2 of the statutes, as it is therein provided that every corporation engaged in supplying light, heat and power, and gas for lighting, heating or power purposes, or water or steam for heating or cooling purposes, or a street railway company

operated by any other motive power than steam, all of which are the avowed purposes for which plaintiff was incorporated, is declared to be a "public utility," and by force of Section 614-3 of the same chapter is under the jurisdiction of the public service commission of Ohio which is vested with power and jurisdiction to supervise and regulate such corporation Section 614-12 of said chapter provides that every public utility shall furnish necessary and adequate service and facilities which shall be reasonable and just. Thus it will be seen that plaintiff is subject to regulation by every municipality in which it does business, and also by the public service commission of Ohio, so ample remedy is afforded to compel it to give service to the public *as of right,* should plaintiff while acting under the powers conferred abuse the authority and undertake to refuse service without just cause or legal excuse. No fear can be entertained therefore that the lands herein sought to be appropriated can be used other than for public uses.

The court finds from the evidence that the high tension line to be constructed by plaintiff is to transmit electric energy over the lands to be appropriated in this action, in order to tie together its system of lines in Ashland county to another system in Stark county, and that this will enable the plaintiff to better serve the public, with light and power which it has been shown is sold by wholesale to other public service corporations and direct to the consumer in many towns and cities of this state, and that, in the territory served by the plaintiff there exists a wide spread demand for light and power, and its creation and distribution therein will promote the convenience and welfare of the inhabitants thereof.

By reason of the facts so found, and under the constitution and laws of this state the court holds the plaintiff has the right to make the appropriation of the interest desired in the lands described in the petition.

And next as to the inability of plaintiff to agree with the owners and others having an interest in the lands described in the petition.

The statute required plaintiff to prove its inability to agree with defendants before it can invoke the jurisdiction of this court, for the reason as has been laid down by the courts that the land owner should not be brought into court if an agreement can be reached, and further public policy requires that such disputes should not take up the time of the courts, unless and until there is an inability to agree. It is agreed by counsel that plaintiff and defendants Jay E. and Mary Elda Frick are unable to agree: The court finds from the evidence that plaintiff through its representatives made an offer for a definite sum of money to defendants Grover G. McCoy and William Snyder for the interests held by them as tenants on certain lands described in the petition, which offer was refused; that the representatives of plaintiff called on numerous occasions on defendants D. W. Mowery and J. S. McCoy and made an offer to them for a definite sum of money for the interest to be appropriated in lands owned by them and exhibited to them a blue print map showing the location and width of the improvement over and across their lands, and there is proof that it was made known to them that the interest sought was to be an easement. There is no dispute these last named defendants refused the offer so made by the representatives and the court is satisfied that the offer so made was the last and best offer the plaintiff was willing to make to said defendants, and there has been an honest effort to agree as to the price to be paid for the easement and rights across the lands of defendants, but there was no meeting of the minds of the parties, and there has been, the court finds, an inability to agree between plaintiff and the owners of lands in the petition described.

And lastly as to the necessity for the appropriation: The court is justified in law in holding there is a necessity for the appropriation, if the plaintiff establish by the proper degree of evidence that the property sought is reasonably necessary to carry into effect the purposes of the corporation.

And as a general rule the amount of land to be taken and the route to be pursued rests in the discretion of the cor-

poration when such discretion is not abused, and where the corporation resolves that it is necessary to appropriate certain lands and no abuse is shown, it will be presumed that there exists a necessity that the lands be taken.

In this case the record shows that the corporation by proper resolution directed that an easement be acquired across the lands described in the petition to carry out the purposes and business in which it is now engaged. It has been shown that the amount of land demanded is not in excess of the needs of the company, and that the route selected for the improvement was selected after proper surveys by competent engineers and after full examination of the territory, and said route was decided upon after considering the location of forests, oil well derricks and other obstructions, and so as to properly protect the safety of the public, and that there has been no abuse of discretion in the selection of the location of the high tension line which passes over and across the lands of defendants, and the court therefore finds that there exists a necessity that the plaintiff appropriate an easement as described in its petition in the lands of said defendants.

And now the finding being in favor of the plaintiff on all the propositions fixed by statute to be established by it upon the preliminary hearing, and proceeding as directed by law, the court orders and directs that a jury be drawn as required by law returnable at a time to be hereafter fixed by the court.